IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 01-31408
_____

KAYNE BROUSSARD, ETC; ET AL.,

Plaintiffs,

versus

THE PARISH OF ORLEANS, ETC; ET AL.,

Defendants.
_____

LEONARD J. DAZET, JR., and all those
similarly situated; JAMES ANTHONY McDANIEL,
and all those similarly situated,

Plaintiffs-Appellants

versus

M.J. FOSTER, ETC; ET AL,

Defendants

KENNETH GOSS, Sheriff of Acadia Parish; ET AL,

Defendants-Appellees
_____

DEMICO PERKINS, and all those similarly situated,

Plaintiff-Appellant

versus

M.J. FOSTER, ETC; ET AL,

Defendants

CHARLES C. FOTI, JR., Individually and in his
official capacity as the Criminal Sheriff of
Orleans Parish, State of Louisiana,

Defendant-Appellee
_____

DEMICO PERKINS, and all those similarly situated,

Plaintiff-Appellant

versus

M.J. FOSTER, ETC; ET AL,

                                                            Defendants

EDWIN A. LOMBARD, In his official capacity as
Clerk of Criminal District for the Parish of
Orleans, State of Louisiana, THE CITY OF NEW ORLEANS,
                                          Defendants-Appellees
--------------------------------------------------------------------
                         Cons/W 01-31410
KAYNE BROUSSARD, ETC; ET AL.,
                                                    Plaintiffs,

versus

THE PARISH OF ORLEANS, ETC; ET AL.,
                                                    Defendants.
_____
DEMICO PERKINS, and all those similarly situated,
                                          Plaintiff-Appellant

versus

M.J. FOSTER, ETC; ET AL,
                                                    Defendants

EDWIN A. LOMBARD, In his official capacity as
Clerk of Criminal District for the Parish of
Orleans, State of Louisiana, CITY OF NEW ORLEANS,
                                          Defendants-Appellees


       _____

            Appeals from the United States District Court
                for the Eastern District of Louisiana

       _____
                         January 10, 2003
Before WIENER and STEWART, Circuit Judges, and RESTANI,[1] Judge.

WIENER, Circuit Judge:

     In this case, the Plaintiffs-Appellants ("arrestees"), are

members of a state-wide group of persons arrested within one year

prior to commencement of this suit.  They now appeal the district

_____

     [1]Judge of the U.S. Court of International Trade, sitting by
designation.

                               2

court's rejection of their challenges to three Louisiana statutes, each of which requires payment of a fee as a prerequisite to release on bail. As we find that such fees are administrative charges reasonably related to the functioning of the bail-bond system, we affirm.

I. FACTS AND PROCEEDINGS

Plaintiffs-Appellants comprise three classes of arrestees who challenge three Louisiana statutes ("bail-fee statutes") that impose specified charges or fees when an arrested individual posts bail.[2] Each class is limited to individuals who were arrested within one year of filing suit. The Defendants-Appellees are the sheriffs of almost every Parish in Louisiana (collectively, the "sheriffs"), including the Sheriff of Orleans Parish ("Orleans Sheriff"), and the Clerk of the Criminal District Court for Orleans Parish ("Orleans Clerk").[3]

The following provisions are the challenged portions of the bail-fee statutes:

1. Section 1432(9) [hereinafter the "multi-sheriff statute"]:

The compensation, fees and costs allowed sheriffs, the parish of Orleans excepted, for all services in criminal matters,

---

[2]The first class consists of arrestees in every Louisiana Parish except Orleans, Avoyelles, Livingston, St. James, and Lafayette. The second class consists of arrestees of Orleans Parish, and the third class consists of arrestees who paid the bail fee to the Clerk of the Criminal District Court of Orleans Parish.

[3]Defendants-Appellees do not include the sheriffs of Avoyelles, Livingston, St. James, or Lafayette Parishes.

shall be the following:

9) For taking appearance bond when required to do so, fifteen dollars, unless suspended by a judge of the district court of the parish. A judge of a district court of the parish shall waive this fee if a defendant has been tried and found not guilty or if the charges against the defendant are dismissed.[4]

2. <u>Sections 1520(3) and (6)</u> [hereinafter "Orleans Sheriff statute"]:

The criminal sheriff of Orleans Parish shall collect from the parties, from witnesses, from sureties, and from sureties on bonds forfeited, the following fees and charges:

(3) For serving notice of arraignment or of trial on accused and surety, for each, and return, seven dollars;

(6) For taking appearance bond or recognizance bond when required to do so, fifteen dollars, unless suspended by the judges of the Criminal District Court of the Parish of Orleans.[5]

3. <u>Section 1381(3)</u> [hereinafter "Orleans Clerk statute"]:

The following charges may be made for the services of the clerk of the criminal district court:

(3) For filing and processing of appearance or witness bond, five dollars.[6]

The bail-fee statutes are among a more extensive group of statutes that provides for fees in a variety of situations. For instance, the Orleans Parish sheriff may charge twelve dollars "[f]or serving attachments to bring witnesses into court"[7]; sheriffs of other parishes may charge two dollars "[f]or each

---

[4]La. Rev. Stat. Ann. § 33:1432(9) (2002).

[5]La. Rev. Stat. Ann. § 33:1520(3), (6) (2002).

[6]La. Rev. Stat. Ann. § 13:1381(3) (1999).

[7]La. Rev. Stat. Ann. § 33:1520(5) (2002).

4

warrant executed outside of the parish"[8]; and the Orleans Clerk may charge two dollars "[f]or filing and recording [an] affidavit."[9] Taken together, the entire group reveals that Louisiana has delegated to various parish officials a portion of the responsibility for covering the expenses that they incur while carrying out administrative tasks.

The bail-fee statutes, however, do not constitute the exclusive legislative attempt to collect money through or for the benefit of the bail-bond system. Section 1065.1 of Title 22 of the Louisiana Revised States imposes a two percent "fee on premium for all commercial surety underwriters who write criminal bail bonds in the state of Louisiana."[10] This fee is distributed to the judicial court fund (25%), the sheriff's general fund (25%), the district attorney's operating fund (25%), and the Indigent Defenders Program (25%).[11] This provision, in fact, was enacted contemporaneously with the repeal of similar but piecemeal legislation,[12] and as a result constitutes "the exclusive fee or tax on any criminal bail

---

[8]La. Rev. Stat. Ann. § 33:1432(7) (2002).

[9]La. Rev. Stat. Ann. § 13:1381(1) (1999).

[10]La. Rev. Stat. Ann. § 22:1065.1(A) (2003).

[11]La. Rev. Stat. Ann. § 22:1065.1(B) (2003).

[12]See 1993 La. Acts 834, at 2212; La. Rev. Stat. Ann. §§ 13:994(B), 996(B), and 1384 (1999).

5

bond premium.[13]  Finally, the Louisiana Legislature has provided for the distribution of bond forfeiture amounts from district courts, parish courts, and city courts to some parish sheriffs around the state.[14]  In total, sheriffs receive funds to support the bail- bond system from (1) a tax on bondsmen (which the bondsmen likely pass on to arrestees), (2) fees imposed by the bail-fee statutes at issue here, and, for some sheriffs, (3) bond forfeitures.

In the district court, arrestees invoked 42 U.S.C. § 1983 to challenge the constitutionality of the bail-fee statutes under the Fourth, Eighth and Fourteenth Amendments, both facially and as applied.  As matters outside the pleadings were presented to the district court, it converted the sheriffs' motion for judgment on the pleadings into a motion for summary judgment, then rejected all of arrestees' claims.

On appeal, the crux of arrestees' argument is the same as it was before the district court:  An arrested person should not have to pay a statutory fee to the parish sheriff or clerk over and above the amount of bail they are required to post.  First, and most significantly, they rely on Augustus v. Roemer to argue that an arrestee has a fundamental right "not to be deprived of or unreasonably inhibited from exercising [bail] once it has been

---

[13]La. Rev. Stat. Ann. § 22:1065.1(A) (2003).  There is one exception to the exclusivity of this fee, but it is not relevant here.  Id.

[14]1993 Acts, No. 834, at 2206, § 571.11(L).

favorably determined."[15]   As a result, insist arrestees, the government must have a compelling interest to restrict that right. Imposing a monetary charge for the purpose of raising revenue, they assert, is not an adequate compelling interest.  This fundamental-rights contention also provides a foundation for arrestees' equal protection and procedural due process claims.

Second, arrestees insist that charging bail-bond fees is akin to imposing costs of prosecution on an acquitted defendant.  Third, they contend that the statutes are void on vagueness grounds because different sheriffs charge fees in differing amounts and maintain inadequate, ambiguous refund procedures.   Fourth, arrestees assert that the bail-fee statutes tempt sheriffs to stack charges so as to fill their departments' coffers.  This temptation, claim the arrestees, violates their procedural due process rights to "an impartial determination of the number of bookings."  Fifth, they contend that these fees constitute excessive fines under the Eighth Amendment.   Finally, they argue that charging a fee to exercise bail constitutes an unreasonable seizure of their person and property under the Fourth Amendment.[16]

---

[15]771 F. Supp. 1458, 1468 (E.D. La. 1991).

[16]The arrestees' remaining three distinct claims are meritless.  They first argue that sheriffs are exceeding their authority if the statutes are construed to impose fees after conviction.  The statutes, however, fairly clearly provide for fee collection before conviction, as that is when a bond is usually taken.  Second, arrestees dispute the district court statement that they failed to show that any charges on arrestees had been dropped.  As we explain, however, arrestees' claims fail

7

In contrast, the sheriffs contend that the outcome of this case, at least with regard to the multi-sheriff statute, §1432(9), is governed by our holding in Enlow v. Tishomingo County.[17]  At issue in that case was a bail-fee statute that was quite similar to the one challenged here.  The district court in Enlow rejected a procedural due process challenge to that statute's constitutionality, and we summarily affirmed the district court, concluding on the basis of our review of the briefs and record that the opinion was "well reasoned and [the case] correctly decided."[18]  The sheriffs contend that the only difference between the Mississippi statute and Louisiana's bail-fee statute is that the Mississippi bail fee was calculated as a percentage of the bond, and the statewide Louisiana bail-fee statute assesses a fixed charge of fifteen dollars.  This difference, they insist, is not material.

The sheriffs also deny that there is any fundamental right to free bail access, and rely on Schilb v. Kuebel to argue that the bail-fee statutes merely authorize valid administrative fees to

---

because they are unable to show that the fees charged are arbitrary or to show that the fees caused a delay in release. Thus, whether any charges had been dropped is immaterial.  Third, arrestees argue that dismissing the City of New Orleans was improper.  Whether or not the City of New Orleans should be a defendant, however, depends on the merits of arrestees' claims. As a result, this issue does not warrant discussion unless the bail-fee statutes are held to be unconstitutional.

[17]45 F.3d 885 (5th Cir. 1995).

[18]Id. at 889.

support the bail-bond system.[19] As the statutes charge only administrative fees to defray the costs of the bail-bond system, continue the sheriffs, such fees do not impermissibly impose court costs; and for the same reason, such fees cannot violate the excessive fines clause of the Eighth Amendment. Finally, the sheriffs deny that (1) the statutes create any temptation to stack charges, (2) such laws are unconstitutionally vague, or (3) they effect a Fourth Amendment violation.

## II. ANALYSIS

Louisiana's bail-fee statutes do not fit snugly into any established area of constitutional jurisprudence. This is quite plausibly the reason why arrestees fired such a broadside of constitutional claims at the sheriffs. As this is the third time these types of statutes have been challenged in this Circuit, and as the results of the previous efforts are in tension with each other, we shall address each of arrestees claims. Even though, in addition to the three laws at issue here, Louisiana's statutory framework provides multiple methods of funding its bail-bond system, relevant Supreme Court precedent characterizing such charges as reasonable administrative fees requires us to affirm the district court on all matters, as we shall demonstrate.

A. **STANDARD OF REVIEW**

We review <u>de</u> <u>novo</u> a district court's grant of summary

---

[19]404 U.S. 357 (1971).

judgment.[20]  Summary judgment is only appropriate if the pleadings and the additional evidence presented show that there is no genuine issue as to a material fact, such that the moving party is entitled to a judgment as a matter of law.[21]  A dispute about a material fact is 'genuine' if there is enough evidence for a reasonable jury to return a verdict in favor of the non-moving party.[22]  Like the district court, when deciding upon a motion for summary judgment, we review all factual questions in the light most favorable to the nonmovant.[23]  We also review <u>de novo</u> all questions of law.[24]

B.    **<u>EIGHTH AMENDMENT EXCESSIVE BAIL</u>**

Arrestees only assert in passing that the bail-fee statutes amount to "excessive bail".  It is nevertheless worthwhile to explain the inapplicability of the Eighth Amendment's Excessive Bail Clause to better frame these statutes under a more general due-process analysis.

The Supreme Court has not frequently considered the contours of the Eighth Amendment's proscription of excessive bail.  In fact, its application to the States has occurred only indirectly.[25]  The

---

[20]<u>Stults v. Conoco, Inc</u>. 76 F.3d 651, 654 (5th Cir. 1996).

[21]Fed. R. Civ. P. 56(c).

[22]<u>Stults</u>, 76 F.3d at 654.

[23]<u>Id.</u>

[24]<u>Id.</u> at 655.

[25]<u>Schilb v. Kuebel</u>, 404 U.S. 357, 365 (1971) (finding that "the Eighth Amendment's proscription of excessive bail has been

10

Court has explained, nonetheless, that a prohibition against excessive bail exists even though there is no absolute constitutional right to bail. In Stack v. Boyle, the Court held that "[b]ail set at a figure higher than an amount reasonably calculated [to ensure the defendant's presence at trial] is 'excessive' under the Eighth Amendment."[26] In applying this standard, we have found that requiring $750,000 bail from a defendant deemed to be a flight risk is not excessive even though the defendant is unable to pay the bail.[27]

More recently, in United States v. Salerno, the Supreme Court acknowledged that, in addition to the authority to detain for flight risk, the government may pursue "other admittedly compelling interests through regulation of pretrial release."[28] The only potential substantive limitation on the ability of the government to restrict bail, the Court concluded, is that "the Government's proposed conditions of release or detention not be 'excessive' in light of the perceived evil."[29]

---

assumed to have application to the States through the Fourteenth Amendment") (citations omitted); Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979).

[26]342 U.S. 1, 5 (1951).

[27]United States v. McConnell, 842 F.2d 105, 107-08 (5th Cir. 1988).

[28]481 U.S. 739, 753-54 (1987).

[29]Id. at 754. The Court explained further that the excessiveness of the government's action is determined as well by "the interest the Government seeks to protect by means of [its

The above-cited cases address whether the government can deny bail altogether, or set it at a very high amount, for the reasons it proffers. In contrast, this case concerns neither the State's attempt to deny bail nor an extremely high bail amount. Rather, it concerns relatively modest fees imposed, over and above the amount of bail, on all arrestees who exercise bail. Clearly, the sheriffs are not advancing the compelling interests recognized by the Court in the cases mentioned above. Rather, they reiterate that the fee statutes are administrative charges imposed to cover costs of the bail-bond system. The sheriffs argue additionally that the fees at issue here are part of a more comprehensive statutory scheme that imposes fees for other actions taken by parish sheriffs in the criminal adjudication process.[30]

It is also clear that the restriction alleged in this case does not implicate the kind of excessiveness of past decisions. Rather, the charges are nominal, nondiscretionary, statutory fees imposed on all arrestees. Indeed, the deprivation arrestees claim here is more theoretical than actual. They have offered no hard evidence that any arrestee who was otherwise able to make bail was ever kept in jail because he or she did not, or could not, pay the de minimis administrative fee. Presumably, if an arrestee is able to secure bail, he or she would be able to pay the modest

---

restriction]." Id.

[30]La. Rev. Stat. Ann. 33:1432.

12

administrative fee required to exercise that right.  And, even if an arrestee were to remain in jail, it is still not clear that an additional fifteen dollars would constitute excessive bail under the Eighth Amendment.  As a result, the interests at stake for both the government and the individual are not easily taken account of by the Salerno test.[31]

In sum, extant excessive-bail jurisprudence does not transfer well to this issue.  Salerno and previous cases have indicated that the government must put forth a compelling interest to restrict or deny bail.  Here, there is neither a compelling purpose nor a restriction on bail analogous to past instances.  Rather there is a largely theoretical, and effectively minimal, constraint on an individual's substantial liberty interest in release.[32]  Nothing in

_____

[31]An analysis of these facts in excessive bail terms would result in an awkward application of the Salerno standard.  The "perceived evil" would be the lack of funding for the bail-bond system rather than the flight risk, or danger to the community, of an arrestee.  Likewise, the restrictions on release are small fees required to exercise bail instead of a large amount of money, which effectively would prohibit release on bail.  Even though the "evil" does not amount to the compelling interest the government has in preventing flight, the restraint imposed also pales in comparison to high bail amounts.

[32]The "excessive bail" jurisprudence does illustrate the substantial interest an individual has in pretrial release from jail.  The Salerno court reiterated that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  Salerno, 481 U.S. at 755.  We have also recognized that interest, stating that "[d]ue to weighty liberty interests, the typical pretrial detainee is rarely detained prior to trial."  Hamilton v. Lyons, 74 F.3d 99, 105 (5th Cir. 1996).  Thus, the need for a compelling purpose to restrict such release implies that an individual maintains a strong liberty interest.

13

these cases has suggested that a theoretically minor restriction imposed for less than a compelling purpose, constitutes "excessive" bail.

C.    **EIGHTH AMENDMENT EXCESSIVE FINES**

There are two reasons why arrestees' excessive-fines challenge fails here.  First, the Supreme Court has never directly applied the Excessive Fines Clause of the Eighth Amendment to the several states.  Although scholars have suggested,[33] and Justice O'Connor has argued,[34] that this clause applies to the states, to date no such attribution has occurred.  Second, even assuming that this clause does apply to the states, the Court has concluded, and the district court here recognized, that "the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law."[35]  Therefore, allegations of punishment before adjudication of guilt must be addressed under the

---

[33]2 Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law: Substance and Procedure, §15.6, at 622 (1999) (arguing for the incorporation of this clause "because it is intertwined with the other two clauses of the Eighth Amendment and the Supreme Court has already regulated the imposition of fines on indigents through the equal protection clause of the Fourteenth Amendment").

[34]See Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 284 (1989) (O'Connor, J. concurring in part, dissenting in part) (urging that the 'excessive fines' clause should apply to the states).

[35]Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977).

Due Process Clause of the Fourteenth Amendment.[36]

The Excessive Fines Clause of the Eighth Amendment, like the Cruel and Unusual Punishment Clause, is applicable only if the statutory fees at issue constitute punishment.[37] But because the bail-fee statutes impose a charge prior to the adjudication of guilt, the Excessive Fines Clause, even if it did apply to the states, would not be the appropriate provision under which to test these statutes. As a result, we must assess the capacity of the bail-fee statutes to constitute punishment through the lens of the Due Process Clause.

D. **DUE PROCESS — BAIL FEES AS PUNISHMENT**

As neither the Excessive Bail Clause nor the Excessive Fines Clause of the Eighth Amendment is applicable to the bail-fee statutes challenged here, we must address the arrestees' more amorphous contention that the bail-fee statutes violate the fundamental right of bail-eligible arrestees to exercise bail without any additional financial impediment. Before addressing this due process contention directly, however, we must explain and

---

[36]Id.

[37]The Court has found that the Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." Austin v. United States, 509 U.S. 602, 609-10 (1993)(internal quotation marks omitted) (emphasis in original). Thus, whether the clause applies depends on whether it is possible to describe the fees imposed as punishment. See United States v. Bajakajian, 524 U.S. 321, 328 (1998) (finding that forfeitures are fines "if they constitute punishment for an offense").

distinguish three other cases relevant to this analysis on which the parties rely.

In Schilb v. Kuebel, the Court addressed a provision with effects remarkably similar to Louisiana's bail-fee statutes.[38] Illinois had instituted bail reform to enable arrestees to avoid the usurious fees of professional bail bondsmen. As part of this reform program, arrestees had the option of paying the court a deposit equal to 10% of their bail amount and thus obtaining release. Later, when they appeared at their hearings, such arrestees were refunded all but 10% (1% of the total bail amount) of the deposit, which the court retained as an administrative fee.[39]

The Court in Schilb addressed only an equal protection challenge and an argument that the fees constituted imposition of court costs prior to conviction. In rejecting both claims, the Court started from the premise that this charge "smacks of administrative detail and of procedure and is hardly to be classified as a 'fundamental' right or as based upon any suspect criterion."[40] The Court then analyzed, under the appropriate rational-basis standard, the fee retention in relation to the ability of arrestees to put up the entire amount of bail and thereby avoid fees entirely. Charging this fee to only those

---

[38]404 U.S. 357 (1971).

[39]Id. at 359–61.

[40]Id. at 365.

arrestees who elected to deposit an amount equal to 10% of their bail, reasoned the Court, was rationally related to the State's interest in defraying expenses that are associated with bail-jumping.[41]

The Court also distinguished this Illinois bail-fee statute from the one considered in Giaccio v. Pennsylvania, wherein the Court struck down a state law that allowed a jury to impose all court costs on a defendant even though it had acquitted him.[42] The Schilb court reiterated that the Illinois charge was "an administrative cost imposed upon all those, guilty and innocent alike" who avail themselves of its benefit, which was distinct from the "imposition of costs of prosecution upon an acquitted or discharged criminal defendant," illegal under Illinois law.[43]

Here, arrestees attempt to distinguish Schilb by highlighting the fact that the statute there at issue was part of a legislative movement to reform the Illinois bail-bond system and was but one option from which arrestees could choose.[44] Louisiana's statutory

---

[41]Id. at 367-68. When the state takes only 10% instead of the entire 100% of the bail amount, it has less security in the event of bail-jumping. It also may be more likely that bail-jumping would occur under the deposit plan because the arrested individuals would forfeit less financially if they failed to appear in court.

[42]382 U.S. 399, 403 (1966).

[43]Schilb, 404 U.S. at 370-71.

[44]Based on Augustus v. Roemer, 771 F. Supp. 1458 (E.D. La. 1991), arrestees argue that Schilb outlined a three factor test for such bail statutes: they must 1) create a voluntary option,

17

scheme, by contrast, is not as reform-minded as the Illinois program. The ability to distinguish Schilb from the instant case on the extent to which the fees charged go toward a program designed to benefit arrestees by reducing reliance on bail bondsmen is inconsequential, however, because the Louisiana bail-fee statutes involve no classification. The fee provisions at issue here apply to all arrestees, regardless of whether they enlist the services of a bail bondsmen or use their own funds to pay bail. Thus, the fact that the Louisiana statutes fail to classify dooms arrestees' equal protection claims and prevents them from positively distinguishing their challenge from the facts of Schilb, at least on equal protection grounds.[45]

In addition to the Schilb court's view that bail fees are at most administrative charges, which fail to invoke any fundamental right, the sheriffs argue that Enlow v. Tishomingo County, in which we upheld a statute similar to those at issue in this case, should govern our conclusion here.[46] At issue in Enlow was a Mississippi statute that imposed on every arrestee exercising his bail option

_____

2) be intended to reform the bail system, and 3) confer a benefit on arrestees.

[45]As we will explain, the differences between reform-oriented bail programs and Louisiana's scheme are likewise immaterial under the relaxed reasonableness standard that applies to due process challenges.

[46]45 F.3d 885, 889 (5th Cir. 1995).

18

a fee equal to the greater of $20 or 2% of the value of the bond.[47] The Enlow district court considered whether that statute violated procedural due process standards by imposing a fee prior to adjudication of guilt.[48] Applying Mathews v. Eldridge,[49] the trial court stated that payment of a bond fee did not amount to a heightened level of private interest.[50] It reasoned that requiring a bond fee was legally indistinguishable from the accepted practice of requiring a detainee to post bond as a prerequisite for release.[51] The district court in Enlow also noted that sufficient standards and procedures existed to facilitate refunds after acquittal.[52] Finally, in addressing the government's administrative interests, the district court relied on Schilb's conclusion that not all administrative fees are unconstitutional.[53]

We affirmed the Enlow trial court's holding and reasoning on

---

[47]Enlow v. Tishomingo County, Civ.A.No. EC 89-61-D-D, 1990 WL 366913, at *2 (N.D. Miss. Nov. 27, 1990).

[48]Id. at *5-6.

[49]424 U.S. 319 (1976).

[50]Enlow, 1990 WL 366913, at *5.

[51]Id. (citing Gladden v. Roach, 864 F.2d 1196, 1200 (5th Cir. 1989) (upholding the ability to impose bail for a non-jailable offense because the gravity of the offense does not alter the purpose of bail to make sure defendants appear at trial)).

[52]Enlow, 1990 WL 366913, at *6.

[53]Id.

appeal.[54]  After reviewing the briefs and record, we concluded that "the district court's opinion regarding the arrestees' constitutional challenges to the statutes is well reasoned and correctly decided."[55]  Despite the absence of substantive discussion, our affirmation of the district court's holding governs procedural due process challenges to similar bail-fee statutes, unless they can be factually distinguished.

The only differences between the Mississippi statutes at issue in Enlow and Louisiana's bail-fee statutes that we consider today are Mississippi's use of a percentage fee rather than a flat fee, and its statute's provision for the State Auditor of Public Accounts to promulgate regulations outlining a refund procedure,[56] in contrast to the Louisiana statutes, which are more ambiguous in their provisions for refunds.  The first difference at best is immaterial to a procedural due process analysis, because the quantum of the Louisiana fees imposed, and thus the private interest affected, is almost always going to be less than the quantum of those imposed under the Mississippi scheme.  The second difference has an effect, if any, only when assessing the risk of error in existing procedures.

Given Enlow's conclusions that the private interests at stake

---

[54]Enlow, 45 F.3d at 889.

[55]Id.

[56]Miss. Code Ann. § 99-1-19(5), (6) (1990) (repealed by Act of March 12, 1990, Ch. 329, § 12, eff. October 1, 1990).

20

are not great, that <u>Schilb</u> specifically rejected a fundamental rights implication of such fees, and that arrestees have failed to demonstrate any actual deprivation, we too conclude that the Louisiana fees do not trigger any heightened level of private interest. Although the liberty interest of an arrestee in release from jail may well be significant, any deprivation attributable to these administrative fees is minimal, if not non-existent. Arrestees have introduced no evidence to suggest that any arrestee has ever been detained because of an inability to pay the bail fee. Arrestees have also failed to articulate a clear argument that these fees constitute a deprivation of a property interest without due process of law.[57]

The second factor is the so-called risk of error. In <u>Mathews</u>, the Court explained this factor as "the fairness and reliability of the existing pretermination procedures, and the probable value, if any, of additional procedural safeguards."[58] The district court here found a low risk of erroneous deprivation because the assessment of fees simply was based on the number of charges on

---

[57]A recent district court case from Southern District of Ohio struck down a statute on procedural due process grounds that imposed a flat thirty dollar book-in fee to cover the administrative costs of confinement of pretrial detainees. <u>Allen v. Leis</u>, 213 F. Supp 2d 819, 831-34 (S.D. Ohio 2002). In conducting a <u>Mathews</u> analysis, the court held that this deprivation of property, like most, required notice and a hearing. <u>Id.</u> at 833-34. Here, however, <u>Enlow</u> has already concluded that the private interest is insignificant, and arrestees failed to pursue this line of argument.

[58]424 U.S. 319, 343 (1976).

21

which an individual is arrested.[59] The procedures for assessing fees are indeed unambiguous; it is not clear, however, that this completes the inquiry. This factor asks not only whether the state will determine the correct amount of deprivation, but also whether it will deprive the right individuals under the current procedures.

In Enlow, the district court concluded that the Mississippi statute contained sufficient procedures and standards to facilitate refunds to acquitted individuals. In contrast, the Louisiana statutes as they now stand, impose a fee on every individual arrested. Thus, the risk is fairly high that persons not ultimately found guilty will have paid this fee. According to Enlow, however, an adequate refund procedure would substantially minimize the risk of this kind of error. Louisiana's multi-sheriff statute provides for a "waiver" of the bail fee by a judge if an arrestee is acquitted or the charges dismissed. The Orleans parish sheriff statute states that a judge may "suspend" this fee, but it does not explain the grounds on which suspension is appropriate. The Orleans clerk statue contains no procedure for obtaining a refund on acquittal or dismissal of charges.

Arrestees argue that the waiver language provides an insufficient procedure for obtaining a refund. Although the Louisiana multi-sheriff statute appears to provide less detail on

_____

[59]Broussard v. Parish of Orleans, No. CIV.A..00-2318, CIV.A.00-3055, CIV.A.00-2056, CIV.A.00-3057, 2001 WL 1335289, at *8 (E.D. La. Oct. 29, 2001).

refund procedures than does the Mississippi statute, this does not mean that it is wholly inadequate.  The record indicates that in at least three parishes, refunds were made on request and that none were denied.  Vernon Parish, for instance, which appears to have collected more bail fees than any other single parish, provided refunds for all thirty-seven requests made.  This kind of evidence supports a conclusion that the multi-sheriff statute is capable of adequately providing a refund.

The arrestees also invoke the St. Charles Parish policy of making booking fees nonrefundable as evidence that the statutory waiver language is inadequate.  The St. Charles Parish policy, however, is expressly provided for in Article 324(3) of the Louisiana Code of Criminal Procedure.[60]  This provision authorizes St. Charles Parish to collect a deposit calculated as a percentage of the bail amount but to charge a fee no greater than fifteen dollars for processing a bond, which is the amount that the sheriff actually charged.  As such, the procedure resembles the remedial program scrutinized in <u>Schilb</u>.  We conclude that the possibility of a refund under the multi-sheriff statute sufficiently mitigates any error that might occur beforehand in charging the fee.

The likelihood of refunds under the Orleans Sheriff and Orleans Clerk statutes is not as certain.  The Orleans Sheriff statute only provides that a judge may <u>suspend</u> the fee requirement.

---

[60]La. Code. Crim. Proc. Ann. art. 324(A)(3) (2002).

This language suggests that there is some process before a fee is assessed, or at least some opportunity to request that a judge suspend the fee. The clerk statute provides for no suspension or waiver of this fee, but it imposes a fee of only five dollars, the least among the bail-fee statutes.

Finally, weighed against the deprivation and the risk of error is the administrative burden resulting from additional procedural requirements and the government's interests in conserving scarce resources.[61] This case deals with the imposition of nominal fees, and the government has an interest in continuing to assess such fees to support its bail-bond system. Greater process could ultimately reduce funding of the bail-bond system by increasing administrative costs and decreasing government revenue from such fees, because more acquitted arrestees are likely to obtain refunds.[62] Insufficient funding could detrimentally affect a sheriff's ability to supervise release on bail, which in turn could mean that fewer individuals actually secure release or that those released find it easier to jump bail. Thus, the government has an interest in the extant procedures to hold down costs and fund a

---

[61]Mathews, 424 U.S. at 347-48.

[62]It would appear that the only effective procedures that would reduce deprivation and error would be the criminal adjudication itself or adequate refund procedures after acquittal. The former would not likely involve any additional procedures, but would delay the assessment of bail fees. The latter would allow bail fees to be assessed immediately, but might require more process later to dispense refunds.

sheriff's office's bail-bond system. The de minimis level of the private interest, moreover, indicates that the government administrative interest need not be great.

When we balance the Mathews factors, we conclude that none of the bail-fee statutes violates procedural due process standards. Although some risk of error exists for fees imposed under the Orleans Sheriff statute and the Orleans Clerk statute, the private interest at stake for all three statutes is minimal, as Enlow instructs, and the government interests in funding the bail-bond system and maintaining cost-effective procedures outweigh any error that may result from inadequate refund procedures. Schilb's characterization of such charges as administrative fees lying beyond the threat of heightened constitutional scrutiny again influences our conclusion. It shows us that the government's administrative interest is reasonable and private deprivation so minimal that the risk of acquitted individuals paying the bail fee is an error without constitutional significance, akin to danum absque injuria.

Having found arrestees' equal protection and procedural due process claims to be unavailing, we turn to their substantive due process challenge. In contrast to the sheriffs' reliance on Enlow, arrestees ground their substantive due process argument on Augustus v. Roemer, a 1991 federal district court case that addressed another Louisiana statute, which imposed a charge on bail bondsmen

25

equal to the greater of $20.00 or 2% of the amount of the bond.[63]

In striking down these provisions, the trial court determined that access to the bail system, once an arrestee was found eligible, constituted a fundamental right that could not be constricted absent a compelling governmental purpose.[64] The district court was not persuaded that raising revenue to run the criminal justice system and to handle the administration of bond forfeitures constituted compelling interests.[65] The court distinguished Schilb on the same grounds that arrestees rely on here: (1) The program was voluntary; (2) it had a narrowly tailored statutory purpose; and (3) it offered a benefit given in exchange for the fee.[66]

The district court's fundamental rights analysis in Roemer crumbles, however, under the weight of Schilb and other related Supreme Court precedent which indicate that these fees do not implicate fundamental rights and thus need only be reasonable.[67]

_____

[63]771 F. Supp. 1458, 1460-62 (E.D. La. 1991). In 1993, the Louisiana legislature repealed the statutes at issue in this case, but simultaneously enacted 22 L.S.A. R.S. §1065.1, which imposes an identical 2% fee state-wide. See La. Acts 1993, No. 834, §§5, 6, eff. June 22, 1993.

[64]Augustus,771 F. Supp. at 1467-68.

[65]Id. at 1468.

[66]Id. at 1470-71 & n.24.

[67]Arrestees also attempt to analogize the bail-fee statutes to the poll tax on voting that the Supreme Court struck down in Harper v. Virginia State Bd. of Elections, 383 U.S. 663 (1966). Harper, however, addressed the long-recognized fundamental right of voting, which the Court considered "preservative of other basic civil and political rights." See id. at 667 (quoting

In <u>Bell v. Wolfish</u>, the Supreme Court addressed a substantive due process challenge to a condition of confinement of a pretrial detainee.[68]  Although <u>Bell</u> addressed specific conditions of the confinement itself rather than potential barriers to release, its approach is instructive to our analysis of the arrestee's due process challenge to the Louisiana bail-fee statutes.  The Court first rejected the lower court's conclusion that the "presumption of innocence" creates a fundamental right to be free from conditions of confinement, absent the government's compelling necessity.[69]  The Due Process Clause, it reasoned, provides "no basis for application of a compelling-necessity standard to conditions of pretrial confinement that are not alleged to infringe any other, more specific guarantee of the Constitution."[70]

<u>Reynolds v. Sims</u>, 377 U.S. 533, 561-62 (1964)).  This case addresses a fee imposed upon arrestees which neither the Supreme Court nor we have found invokes a fundamental right.  Instead, as we explain here, this type of charge requires only a reasonable relationship to a legitimate government purpose.

[68] 441 U.S. 520 (1979).

[69] <u>Id.</u> at 532.  We have recognized the subsequent limits placed on <u>Bell</u> by the Supreme Court with regard to the level of culpability required to find a due process violation.  <u>See</u> <u>Ortega v. Rowe</u>, 796 F.2d 765, 767-68 (5th Cir. 1986) (recognizing the Supreme Court opinions post-<u>Bell</u> that found negligent behavior insufficient to trigger due process protection, and as a result requiring intentional or knowing action to conduct a <u>Bell</u> analysis).  These limits, however, are not relevant in this case because the mental state of the sheriffs is not in question.

[70] <u>Bell</u>, 441 U.S. at 533.  As we explained <u>supra</u>, neither the Excessive Fines Clause, nor the Excessive Bail Clause, nor any other specific constitutional provision is applicable to the bail fee statutes.

27

Rather, the Court concluded in <u>Bell</u> that when the right being challenged is not one that is expressly guaranteed in the Constitution, the issue merely concerns "the detainee's right to be free from punishment," which "does not warrant adoption of [a] compelling-necessity test."[71] Using factors laid out in <u>Kennedy v. Mendoza-Martinez</u>, the Court ruled that if there is no express showing of an intent to punish, and "a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'"[72] On the other hand, if there is no reasonable relationship between the restriction and a legitimate interest, such that the restraint is "arbitrary or purposeless — a court permissibly may infer that the purpose of the governmental action is punishment...."[73] Addressing the condition at issue in <u>Bell</u> — the practice of double-bunking at a pretrial detention facility — the Court concluded that the condition did not constitute punishment because the practice was instituted for the purpose of dealing with increased numbers of detainees and the burden on the detainees was minor.[74]

<u>Bell</u> may not be directly applicable to this case, because the

---

[71]<u>Id.</u> at 534.

[72]<u>Id.</u> at 538-39 (<u>citing</u> <u>Kennedy v. Mendoza-Martinez</u>, 372 U.S. 144 (1963)).

[73]<u>Bell</u>, 441 U.S. at 539.

[74]<u>See</u> <u>id.</u> at 525-26, 540-43.

28

bail-fee statutes might not constitute a condition or restriction on confinement as envisioned by <u>Bell</u> and subsequent cases. <u>Bell</u>, for instance, addressed the double-bunking of prisoners; and we subsequently addressed denials of such items as visitation, telephone access, recreation, mail, legal materials, and showers for a three-day period.[75] Other circuits applying <u>Bell</u> have addressed such conditions as placement in solitary confinement after attacking another inmate,[76] administrative lockdown,[77] and administrative segregation.[78] In short, these cases deal with more restrictive confinement without release, not an added financial burden to already-sanctioned release.

Nevertheless, <u>Bell</u>'s analytical framework, in addition to <u>Schilb's</u> conclusion that such fees appear to be administrative, is helpful in resolving this case. <u>Schilb</u> instructs that this category of fees fails to infringe any fundamental rights; <u>Bell</u>, in turn, articulates a test that enables us to determine whether such charges are reasonable administrative fees or impermissible arbitrary punishment. Thus, the inquiry reduces to a

---

[75]<u>Hamilton v. Lyons</u>, 74 F.3d 99, 106-07 (5th Cir. 1996). The court's application of <u>Bell</u> in this case was slightly different because the plaintiff was a detained parolee instead of the average pretrial detainee. <u>Id.</u> at 104. That distinction, however, does not affect the type of confinement restriction subject to the <u>Bell</u> standard.

[76]<u>Rapier v. Harris</u>, 172 F.3d 999, 1001-02 (7th Cir. 1999).

[77]<u>O'Connor v. Huard</u>, 117 F.3d 12, 15-16 (1st Cir. 1997).

[78]<u>Stevens v. McHan</u>, 3 F.3d 1204, 1205-06 (8th Cir. 1993).

29

reasonableness analysis.

Reasonableness depends on both the nature of the government interest itself and the extent to which the statutes at issue supports that purpose. Section 1432(9), the multi-sheriff statute, imposes a fifteen dollar fine for "taking [an] appearance bond." The other two statutes impose fees for similar tasks. The district court indicated that these statues "are linked to a legitimate government purpose of providing funds for the administration of the bail-bond system...."[79] In their appellate brief, the sheriffs cite several provisions of the Louisiana Code of Criminal Procedure in support of their contention that the bail-bond system is entirely dependent on the services of the sheriff for its proper operation. In particular, the sheriffs emphasize that Article 344 of the Louisiana Code of Criminal Procedure requires the sheriff to serve notice on a defendant and his surety of a required appearance in court.[80]

The connection between these fees and the bail-bond system in particular is less than clear. The sheriffs seem to use Article 344's requirement that sheriffs give notice to arrestees to appear in court to demonstrate the significance of sheriffs in bail-bond matters. But even this requirement of sheriffs' time appears to be

---

[79]<u>Broussard v. Parish of Orleans</u>, No. CIV.A..00-2318, CIV.A.00-3055, CIV.A.00-2056, CIV.A.00-3057, 2001 WL 1335289, at *8 (E.D. La. Oct. 29, 2001).

[80]La. Code Crim. Proc. Ann. art. 344 (2002).

30

overstated.  Article 344 requires no additional notice when a bail bond fixes the initial appearance date;[81] it is only when the bond does not fix such a date that additional notice required.[82]  Such notice neither requires action by a sheriff nor personal service of the notice.  Rather, it states simply that an officer of the court may deliver notice, or it may be sent via first class mail.[83]  In short, the sheriffs appear to exaggerate both the amount of work involved and the time and effort required of sheriffs in this process.

In addition, Louisiana already charges fees directly to bail bondsmen.  Section 1065.1 of Title 22 of the Revised Statutes charges a 2% fee on "all commercial surety underwriters who write criminal bail bonds in the state of Louisiana."[84]  This statute specifies that 25% percent of the amount collected goes to the "sheriff's general fund" and that other amounts go to the judicial court fund, the district attorney's operating fund and the Indigent Defenders program.  As a result, this provision seems to address more directly the overall financing of the bail-bond system.  It specifies distribution of funds not just to the sheriff, but also to the other groups that participate in the bail-bond system.  In

---

[81]Art. 344(A).

[82]Art. 344(B).

[83]Art. 344(B)(2).

[84]La. Rev. Stat. Ann. § 22:1065.1 (2003).

short, there are reasons to question the extent to which the bail-fee statutes at issue support the bail-bond system.

There are also reasons, however, that supply a rational connection between these statutes and a legitimate government purpose.  Despite the sheriffs' failure to elaborate on their contention, we can imagine that bail fees help offset the costs of paperwork and subsequent time required of sheriffs or clerks to keep track of those arrestees who are out on bail.  Arrestees have presented no evidence to demonstrate that such fees are unnecessary or to show that alone the funds received from the bail bondsmen tax and from bond forfeitures are sufficient to support the bail-bond system.

Furthermore, the broader statutory scheme of which these provisions are a part provides additional support for the characterization of these bail fees as reasonable administrative charges.  They are part of a comprehensive schedule of fees for actions taken by a sheriff or clerk, including fees for serving a subpoena duces tecum,[85] for mileage when traveling outside the Parish of Orleans,[86] for executing warrants outside of the sheriff's parish,[87] and for furnishing copies of indictments.[88]  Although the

---

[85]La. Rev. Stat. Ann. § 33:1520(8) (2002).

[86]§ 33:1520(10).

[87]La. Rev. Stat. Ann. § 33:1432(7) (2002).

[88]La. Rev. Stat. Ann. § 13:1381(24) (1999).

32

bail-fee provisions may be unique as the only provisions that theoretically separate an arrestee from his or her release from confinement, the amount of the fee does not appear to be unduly burdensome. As noted, the record is barren of evidence indicating that a single arrestee had to remain in jail because he or she was unable to pay the required fees, as distinguished from the bail itself.

Even though the connection between the bail fees charged and the administration of the bail-bond system may be somewhat tenuous, especially when compared to reform schemes in other states, arrestees have failed to present evidence sufficient to show that the fees imposed are arbitrary. Thus, we must reject arrestees' substantive due process challenge as well.[89]

E.  **OTHER CONSTITUTIONAL CLAIMS**

1. Vagueness Challenge

Arrestees contend that the bail-fee statutes are void on vagueness grounds, relying on Giaccio v. Pennsylvania.[90] Arrestees

---

[89]Arrestees also rely on the ancient case of State ex rel. Leche v. Waggner, 8 So. 209, 211 (La. 1890), which struck down a statute almost identical to the Orleans Clerk statute. Although to our knowledge no case has overruled Waggner, we discern two reasons why its holding does not govern here. First, the Waggner court failed to articulate the basis on which it found this statute offensive, which makes it impossible for us to determine whether it would even be persuasive precedent to our federal constitutional analysis. Second, Schilb and Bell have been decided subsequently by the United State Supreme Court, and quite clearly characterize such charges as administrative fees, which need only relate reasonably to a legitimate government interest.

[90]382 U.S. 399 (1966).

also attempt to use <u>Giaccio</u> to support their argument that the bail fees constitute impermissible court costs.

In <u>Giaccio</u>, the Supreme Court addressed a Pennsylvania law allowing juries that had acquitted a defendant to determine whether he should nevertheless pay all court costs of the prosecution.[91] The Court struck down the law as vague because it gave juries "broad and unlimited power in imposing costs on acquitted defendants," such that it allowed them to use "their own notions of what the law should be instead of what it is."[92]

The bail fees charged here, in contrast, are not factually akin to the costs of prosecution. Although both situations might involve fees charged to individuals who are ultimately acquitted, the <u>Giaccio</u> court found particularly problematic the unfettered power of jurors to impose their own view of the law in assessing fees. The Louisiana statutes here at issue are well-defined laws which clearly outline the fees charged. The fees themselves are small, and no judicial or executive officers are empowered to charge fees greater than those that are statutorily allowed.

Neither are these fee statutes unconstitutionally vague. In <u>Buckland v. Montgomery County</u>, a case factually more similar to ours than is <u>Giaccio</u>, the Third Circuit addressed a vagueness challenge to a Pennsylvania program identical to the Illinois

---

[91]<u>Id.</u> at 400.

[92]<u>Id.</u> at 403.

34

program considered in Schilb, except that the Pennsylvania statute provided for retention of a "reasonable fee," instead of a set 1% of the total bail amount.[93] The Buckland court rejected the vagueness challenge, finding that fees were established in the public record and were applied uniformly and with advance knowledge to those using the court bail program.[94] Further, the variation in fees simply reflected the differing local conditions and expenses of the different geographical areas in which they were imposed.[95] Similarly, the fee amounts we consider today are stated clearly in the public records. Even though sheriffs may employ different practices for assessing such fees, there is no evidence that any sheriff has charged more than the statutorily allowed amount.

2. Temptation to Stack Charges

Arrestees also assert that these statutes tempt sheriffs to stack charges against arrestees in violation of their due process rights. Arrestees rely on Ward v. Village of Monroeville[96] and Tumey v. Ohio[97] to argue that these statutes give sheriffs the partisan incentive to make unnecessary charges to maintain sufficient funding for their respective departments. Conceding

----

[93]812 F.2d 146, 149 (3rd Cir. 1987).

[94]Id.

[95]Id.

[96]409 U.S. 57, 59-60 (1972).

[97]273 U.S. 510, 532 (1927).

that <u>Ward</u> and <u>Tumey</u> applied to judges and focused on the requirement that they remain impartial, arrestees nevertheless insist that this standard should apply to the Louisiana sheriffs and clerks as well, and attempt — unsuccessfully — to distinguish our holding in <u>Brown v. Edwards</u>.[98]  In making their argument, arrestees seem to presuppose that the fees are analogous to punishment or to a determination of guilt before trial.  That is the basis on which they argue that sheriffs impermissibly control executive and judicial functions, in violation of due process.  As the preceding analysis has illustrated, however, imposing fees does not constitute "punishment" under <u>Bell</u>; thus arrestees' reliance on <u>Ward</u> and <u>Tumey</u> is unavailing.

The district court's dismissal of this challenge is sound.  It correctly noted that <u>Ward</u> and <u>Tumey</u> are inapplicable to this case, because the focus of those cases was on individuals who exercised a judicial function.  "[T]he test is whether [the individual's] situation is one 'which would offer a possible temptation to the average man <u>as a judge</u> to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused....'"[99]

In <u>Brown v. Edwards</u>, we reiterated the significance of the

_____

[98]721 F.2d 1442 (5th Cir. 1984).

[99]<u>Ward</u>, 409 U.S. at 59 (citing <u>Tumey</u>, 273 U.S. at 532) (emphasis added).

function exercised in determining a violation of due process. [100] Rejecting a challenge to a statute that enables Mississippi constables to collect ten dollars for each charge that results in a conviction, we emphasized that "an arrest by a constable is not judicial action, but action under executive or legislative authority."[101] We concluded, moreover, that peace offers are not expected to exercise the same level of impartiality and neutrality as judges and magistrates.[102]

Brown is controlling here. Neither the sheriffs nor the clerks exercise, or are supposed to exercise, a judicial function. Thus, like constables, they are not expected to maintain a level of impartiality equal to that expected of judges. Consequently, a decision to make multiple charges and impose concomitant fees would not conflict, at least under relevant precedent, with any budgetary control they might maintain. As in Brown, arrestees have not challenged the lawfulness of the original arrests. Assuming the existence of valid probable cause, which arrestees give us no reason to question, the sheriffs are simply carrying out their statutory prerogative of assessing fees based on the charges

---

[100]721 F.2d at 1451.

[101]Id.

[102]Id. Arrestees incorrectly argue that Brown stands for the proposition that no temptation to stack charges exists when a constable only received fees on successful charges and after conviction. The Brown court, however, grounds much of its holding in the fact that constables are not judges, nor do they exercise a judicial function. Id.

brought.

### 3. Fourth Amendment Challenge

Arrestees finally assert that being charged fees in conjunction with bail release constitutes an unreasonable seizure of their person and property under the Fourth Amendment. They cite no cases to support this proposition; instead, they would liken the bail-fee requirement to the crimes of aggravated kidnapping and extortion, which is obviously inapt.

In rejecting this challenge, the district court relied on the facts that arrestees neither challenged the validity of their arrest and initial detainment, nor put forth any evidence that in fact they were unreasonably detained as a result of the bail fee.[103] We agree with the reasoning and holding of the district court on this issue. As the arrestees do not challenge their initial arrest and confinement, i.e. they do not allege that the sheriffs lacked warrants or probable cause, and as there is no evidence of unreasonable delay in release, there simply is no demonstration of a Fourth Amendment problem. Thus, there is neither legal nor factual support for arrestees' Fourth Amendment argument.

### III. CONCLUSION

We discern no merit in any of arrestees' myriad arguments attacking the constitutionality of the several Louisiana bail-fee

---

[103]Broussard v. Parish of Orleans, No. CIV.A.00-2318, CIV.A.00-3055, CIV.A.00-3056, CIV.A.00-3057, 2001 WL 1335289, at *8 (E.D.La. Oct. 29, 2001).

statutes here at issue. Although the facts of this case differ slightly from those addressed in <u>Schilb</u> and <u>Bell</u>, their holdings nevertheless adequately frame our approach to this case. As bail-fee statutes, these provisions are relegated to the mundane realm of administrative concern, never mounting the high pedestal of the kind of scrutiny required for fundamental rights. Furthermore, even if these fees were to constitute restrictions on confinement, they would only need to be reasonably related to a legitimate government purpose. Even though the sheriffs' reasons for charging these fees are relatively weak, we nonetheless find that such fees relate sufficiently to the bail-bond system to keep them from being arbitrary. Finally, arrestees have failed to adduce evidence that any among them was actually detained for a longer period of time because of such fees, or that such fees lack any reasonable connection to administration of the bail-bond system, without which all their claims must fail. For the foregoing reasons, therefore, the judgment of the district court is, in all respects,

AFFIRMED.