In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-3428

DELVIN C. PAYTON, *et al.*,

*Plaintiffs-Appellants,*

*v.*

COUNTY OF CARROLL, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 8514—**Elaine E. Bucklo**, *Judge.*

ARGUED JUNE 7, 2006—DECIDED JANUARY 18, 2007

Before BAUER, RIPPLE, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* When a person is arrested in
Illinois, he or she is arraigned, and when possible, the
court releases the detainee either on bail or on personal
recognizance. See Illinois Bond Statute, 725 ILCS 5/110-2
(own recognizance); 5/110-4 (bailable offenses). (In *People
v. Purcell,* 778 N.E.2d 695 (Ill. 2002), the Illinois Supreme
Court held unconstitutional the part of this statute that
governs bail for capital defendants. *Id.* at 700. This hold-
ing has no effect on the present case.) In addition, Illinois
sheriffs are entitled to charge detainees an administrative
fee for the privilege of posting a 10 percent bond with the
sheriff (rather than, say, the county clerk). 55 ILCS 5/4-

5001 [¶ 8] ("Fee Act"). The fee is $1, *id.*, unless the county justifies a higher fee through an acceptable cost study, *id.* at ¶ 39.

The present appeal is a sequel to an earlier one we heard, in which a putative class of former arrestees challenged those administrative fees on a variety of constitutional grounds. See *Payton v. County of Kane,* 308 F.3d 673 (7th Cir. 2002) (*Payton I*). In our earlier decision, we held (1) that the named plaintiffs had standing to sue the particular counties in which they had been detained; (2) that there was no standing bar to the proposed class actions against DuPage and Kane Counties; and (3) that before the court could decide whether the suit could proceed against the other 17 counties plaintiffs had named, it had to resolve the question of class certification. On remand, the district court first dismissed 12 of the 13 counts in the Fourth Amended Complaint, which named as defendants 39 Illinois counties and relevant officials. It preserved only the claim that the Fee Act violates the Equal Protection clauses of the United States and Illinois Constitutions, for the reason that the bond fee is not the same throughout the state. Next, the court found that a statewide class action was not warranted because of lack of typicality. See FED. R. CIV. P. 23(a)(3). Without a statewide class, the court found, the named plaintiffs lacked standing to pursue the remaining claim against the 37 other counties (apart from DuPage and Kane) and their officials. The court accordingly entered judgment under Rule 54(b) permitting all of the case except the claims against DuPage and Kane counties to be appealed immediately.

Plaintiffs urge strenuously that the district court's dismissal of the 12 counts flouted this court's opinion in *Payton I*, which they read as a definitive holding that they had stated a claim for purposes of Rule 12(b)(6). They also argue that the court erred in denying the motion for

class certification and in granting summary judgment for the 37 county defendants and associated officials. In our view, however, plaintiffs have read too much into our earlier opinion. We conclude that the district court properly followed our mandate, that it correctly dismissed the 12 counts at issue here, and that it did not abuse its discretion in denying class certification. We therefore affirm.

# I

With respect to the plaintiffs' challenge to the district court's ruling on the motion to dismiss, our review is of course *de novo. County of McHenry v. Ins. Co. of the West,* 438 F.3d 813, 817 (7th Cir. 2006). Our review of the court's decision to deny class certification is for abuse of discretion. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 340 (7th Cir. 1997). As the background facts in this case are uncontested, we proceed immediately to a consideration of the plaintiffs' arguments on appeal.

## A

We first take up the 12 counts that were dismissed for failure to state a claim upon which relief may be granted. Because there is some duplication of theory among those counts, we have grouped them here into five different categories.

### 1. Count I: Excessive Bail

The Fourth Amended Complaint, which is the one that now governs the case, alleges in Count I that the Fee Act violates both the Eighth Amendment's prohibition on excessive bail and the rule of Art. I, § 9 of the Illinois

Constitution, which guarantees bail except in cases of serious offenses where a court determines that there is a risk to public safety. The district court rejected the Eighth Amendment argument on the ground that the fee here was a *de minimis* administrative charge that could not, as a matter of law, be deemed "excessive." It found that it was immaterial that this fee is paid upon release from custody, rather than upon the return of the deposit following appearance at trial, as in *Schlib v. Kuebel,* 404 U.S. 357 (1971). The court also pointed out that Illinois arrestees have alternatives to paying the fee. For example, they may pay the clerk rather than the sheriff, in which case the fee does not apply. Illinois judges have the power to adjust bail to compensate for the fee, if this would make a meaningful difference. Moreover, arrestees may seek bail reduction to free up funds to pay the fee. The district court did not address the state constitutional argument separately, nor has anyone done so in the briefs before this court. That argument is therefore waived.

As the district court recognized, the Supreme Court's decision in *Schlib* has some bearing on this case. There, the Court upheld an earlier Illinois bail law that permitted the court clerk, upon the conclusion of the trial, to retain as "bail bond costs" 1 percent of the specified bail or 10 percent of the amount actually deposited. Schlib, who had posted $75 to secure bonds of $500 and $250 on two charges, was acquitted at trial on one and convicted on the other. When his bond was returned, the clerk deducted $7.50 for administrative costs. Schlib sued, claiming that the statute permitting this fee violated both the Due Process and the Equal Protection Clauses of the Fourteenth Amendment. The Supreme Court was unpersuaded. It held that the right to be free from a minor administrative cost like this was not fundamental and thus that rational basis review applied. From that, it was an easy

step to uphold Illinois's decision to impose the fee, as well as its decision not to impose a fee in the distinguishable circumstances of release on personal recognizance and payment of the full amount of the bail. See 404 U.S. at 367-68. The Court noted that it did not have any question about the Eighth Amendment before it. *Id.* at 364-65.

The Eighth Amendment issue came before the Fifth Circuit in the case of *Broussard v. Parish of Orleans,* 318 F.3d 644 (5th Cir. 2003). For guidance, that court turned first to the Supreme Court's decision in *Stack v. Boyle,* 342 U.S. 1 (1951). There, the Court held that:

> [l]ike the ancient practice of securing the oaths of responsible persons to stand as sureties for the accused, the modern practice of requiring a bail bond or the deposit of a sum of money subject to forfeiture serves as additional assurance of the presence of an accused. Bail set at a figure higher than an amount reasonably calculated to fulfill this purpose is "excessive" under the Eighth Amendment.

*Id.* at 5. The Fifth Circuit also looked to the Supreme Court's later decision in *United States v. Salerno,* 481 U.S. 739 (1987), which dealt with the constitutionality of federal bail reform legislation. In that opinion, the Court underscored the fact that the amount charged for bail depends on what is at stake:

> Nothing in the text of the Bail Clause limits permissible Government considerations solely to questions of flight. The only arguable substantive limitation of the Bail Clause is that the Government's proposed conditions of release or detention not be "excessive" in light of the perceived evil. Of course, to determine whether the Government's response is excessive, we must compare that response against the interest the

Government seeks to protect by means of that response.

*Id.* at 754.

In *Broussard,* the Fifth Circuit observed that the case before it "concern[ed] neither the State's attempt to deny bail nor an extremely high bail amount. Rather, it concerns relatively modest fees imposed, over and above the amount of bail, on all arrestees who exercise bail." 318 F.3d at 651. Although the court conceded that the fees did not advance a compelling interest like public safety, it pointed out on the other hand that "[i]t is also clear that the restriction . . . does not implicate the kind of excessiveness of past decisions." *Id.* The deprivation imposed by the fees, in short, was "more theoretical than actual," in the absence of any evidence of an arrestee who was otherwise able to make bail but who could not because of the administrative fee. *Id.*

We see the Illinois system in much the same way. The arrestees claim that the administrative fees infringe on their federally protected right to bail, and they point to one statement in *Payton I* where we said it is "hard to see how they could have failed to state a claim under the notice pleading regime of [Rule 8]." 308 F.3d at 676. They distinguish *Schlib* on the ground that the fee there was imposed after trial, while theirs is a condition of pre-trial release. Their comment on *Broussard* is that the Louisiana statute at issue there provided for "remedies and procedures not available under the Illinois statute." Finally, they complain that the Illinois fees are arbitrary, cause a delay in release, are discretionary from county to county, sometimes prevent people from leaving jail, are not returned if one is found innocent, and cannot be waived.

The panel expressed interest in the last of these points, and in response to a question from the bench, the parties

have filed supplemental memoranda on the question whether Illinois law provides a means to waive the administrative fee. That research and our own reveals that at one time, the Illinois Code of Criminal Procedure explicitly permitted an incarcerated defendant who owed a fine or costs that he could not pay to file an affidavit to that effect and be released with a waiver of the amount due. See 38 Ill. Rev. Stat. ¶ 180-6 (1972) (repealed by P.A. 80-741, § 1, eff. Oct. 1, 1977). It is unclear, and ultimately not important, whether that former statute would have applied to the fees present here. The county defendants argue that under existing law, there are at least two ways by which an indigent defendant may obtain a waiver of the fee. They rely primarily on Illinois Supreme Court Rule 298(b), which permits an indigent person to request and obtain the right "to sue or defend without payment of fees, costs, or charges." Secondarily, they argue that Illinois courts have inherent authority to waive costs for indigent defendants, citing *People ex rel. Conn v. Randolph,* 219 N.E.2d 337, 340 (Ill. 1966) (dealing with inherent power to order reimbursement of costs advanced by attorneys for indigent litigants); *People v. Wilson,* 453 N.E.2d 949, 952-54 (Ill. App. Ct. 1983) (requiring payment of certain litigation costs for indigent defendant as a matter of inherent power); *People v. Rhode,* 580 N.E.2d 612, 614-15 (Ill. App. Ct. 1991) (awarding fees to pay for the services of an investigator to assist an indigent defendant). Plaintiffs take issue with this, noting that Rule 298 appears in a section of the Illinois Supreme Court's rules dealing with civil proceedings, that none of the court's rules directly pertaining to bail mention waivers of these fees, and that the inherent power cases are distinguishable.

Interesting though this question of state law is, we conclude that we have no need to resolve it here. First, as the district court pointed out, Illinois courts enjoy con-

siderable discretion in setting the amount of bond to begin with. The indigent defendant will care about the sum of the amount that must be posted to obtain release and the amount of the administrative fee, not how much each component is. Thus, we agree with the district court that even apart from Rule 298 and inherent power, the state courts are able to address the problem of the indigent defendant. Second, we were told at oral argument that the practice of at least some counties was to release detainees who made bail and *then* to collect the administrative fee. To the extent that is the case, the fee is not part of the bail at all, and thus the Eighth Amendment is not implicated by the amount of the fee. We assume for the sake of argument, however, that at least some counties may insist that the fee be paid prior to the detainee's release, and we consider the remainder of the plaintiffs' arguments in that light.

Plaintiffs' attacks on the system in Illinois fail for several reasons. First, there is no indication that judges set bail at the maximum point that would be non-excessive, such that the addition of the modest administrative fee tips the balance and makes the bail constitutionally excessive. If, for example, bail of $1,000 is reasonable, it would be absurd to say that bail of $1,001, or $1,050, is automatically excessive. Second, Illinois law permits detainees to file a motion for reduction of bail, 725 ILCS 5/110-6, which could be used if the final number were indeed too high. As for the sentence in *Payton I* that the plaintiffs have highlighted, the short answer is that context matters. We were talking about the individual claims against DuPage and Kane Counties, which are still pending in the district court, and we did not specifically approve of the sufficiency of any particular count of the complaint. Moreover, our holding was simply to reverse the district court's decision dismissing those claims on the basis of standing. The court was free on

remand to consider the sufficiency of the pleadings, once the standing barrier was out of the way. Finally, we find the analysis in *Broussard* persuasive, at least on the facial challenge we have here. We note that we do not have before us a particular claim in which someone alleges that a sheriff has refused to release an individual because he or she could not pay the fee. Such an "as applied" case would have to be evaluated on its own facts.

### 2.  Counts II, III, and VIII: Due Process

The district court dismissed these counts because it concluded that "charging arrestees a fee in exchange for providing a service simply does not implicate the Constitution." In addition, it recalled from its excessive bail analysis that the fee is *de minimis,* that arrestees usually have the alternative of paying their bond to the clerk without the fee (assuming that the clerk's office is open—a qualification the plaintiffs believe is important), and that arrestees may petition to have their bail reduced. The plaintiffs do see a due process problem here: they assert, in Count II, that the counties never established "policies, procedures, waivers, hearings, or other process whereby the Plaintiffs . . . may secure their pre-trial release without paying the bond fees," in violation of the federal and state constitutions. Count III makes essentially the same arguments with respect to the arrestees' "property interest in the bond fee paid to Defendants to secure their pre-trial release" and focusing on the lack of procedures for obtaining a refund of the fee paid for those who ultimately are found innocent or otherwise are discharged. Count VIII adds the allegation that there is no policy or procedure for those who post bond or obtain release on personal recognizance, but do not have enough for the fees, to obtain release.

Although some of the arguments plaintiffs are presenting were not before the Supreme Court in *Schlib*, others

were. In *Schlib,* the Court found that the administrative fee before it did not offend due process even though it was imposed on both those who were convicted and those who were acquitted. See 404 U.S. at 370-71. That is enough to dispose of this part of the current plaintiffs' claims. In *Broussard,* the Fifth Circuit found that given "that the private interests at stake are not great, that *Schlib* specifically rejected a fundamental rights implication of such fees, and that arrestees have failed to demonstrate any actual deprivation," the Louisiana fees "do not trigger any heightened level of private interest." 318 F.3d at 655. It found that the state procedures were adequate to protect whatever minimal interest existed, and that the state had a valid claim for administrative fees to defray its costs of running the bail-bond system. Taking all of this into account, it rejected the due process arguments.

The same things can be said of the Illinois system before us. We add that nothing in *Payton I* undermines this conclusion. It is important, in this connection, not to confuse standing analysis with analysis on the merits. We found in *Payton I* that the named plaintiffs had standing to litigate whether a due process violation (and all the other alleged violations) had occurred, not that any particular part of the complaint was vulnerable to a dismissal on Rule 12(b)(6) grounds. On this appeal, it would have been prudent for the plaintiffs to have said more about *Mathews v. Eldridge,* 424 U.S. 319 (1976) (the case on which the Fifth Circuit had relied in *Broussard,* and the case that establishes the general framework for due process analysis), in addition to their brief acknowledgment that it was cited in *Broussard.*

*Eldridge* held that:

> identification of the specific dictates of due process generally requires consideration of three distinct

> factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

Because our review is *de novo,* we have chosen to review these factors despite plaintiffs' lack of attention to them. The private interest that is affected by the official action here is the detainee's liberty interest. Although, for the reasons we have already given, we think it unlikely that most people's liberty interests are affected at all by these fees, this case reaches us from a dismissal under Rule 12(b)(6). It is not physically impossible that someone's interests could be so affected, and plaintiff Payton claims that exactly this happened to him: he was able to assemble the $5,300 he needed for bail, but he could not immediately raise the additional $33 he had to pay as an administrative fee, and consequently he had to stay in jail for two more hours. The second *Eldridge* factor asks, in effect, what is the risk of an erroneous deprivation and how additional procedures might reduce that risk. The fact that there are other options for detainees such as paying a county clerk (perhaps waiting for that office to open), paying the bond in full, or putting down property as collateral, indicates that the system as a whole contains a number of safeguards against detention of people who cannot afford this fee. Detention of the innocent is not something that should be taken into account, since the Supreme Court has said that the eventual outcome of the case is immaterial. The opportunity to seek a reduction in bail is the procedure currently available to

minimize whatever risk remains. Finally, the sheriffs have a legitimate interest in recouping some of the costs of administering the bail system. If they had to offer another separate set of hearings devoted only to these small administrative fees, they might opt out of the bail bond process altogether—a step that Illinois would permit them to take. Every detainee would then need to wait for the office hours of the county clerk, rather than the subset of detainees who now elect that option. We conclude that plaintiffs have not stated a claim for a deprivation of due process.

### 3.  Count IV: Equal Protection

The district court dismissed Count IV as duplicative of Count VII, which it permitted to continue. The counties point out that although the plaintiffs included Count IV in their list of rulings covered by their appeal, they never addressed it in their opening brief; that means, the counties argue, that it is now waived. Plaintiffs seem to agree with the district court's assessment: Count IV is somehow merged into Count VII, and thus nothing particular needs to be said about it here. The equal protection theory in Count IV contrasted those who must pay the administrative fee with those who do not need to do so, while Count VII claims that the bond fee is not equal among all detainees, that the setting of bond is arbitrary and capricious, and that the process irrationally treats some detainees differently from others. The overlap between Count IV and Count VII is obvious; we therefore will also treat anything in Count IV as covered by Count VII.

### 4.  Counts V, VI, X: Unauthorized Collection of the Fee

The district court had little to say about this part of the case, holding only that these claims were not redressable

in federal court. It is true that all three on their face seem primarily to raise state-law issues: Count V contends that the county ordinances and policies were not authorized by state law; Count VI asserts that before January 1, 2000, Illinois law "neither authorized the Sheriff of any county to receive a fee for taking bonds in criminal cases nor authorized the Sheriff of any county to collect a bond fee" or "to detain persons until a bond fee is paid," and that the 2000 state legislation is impermissibly retroactive and violates the Eighth Amendment; Count X alleges a violation of Illinois's separation of powers provisions, which are found in Article II, § 1 of the state constitution.

On appeal, plaintiffs focus on the retroactivity issue and the effect of the 2000 legislation. To the extent that Counts V and VI deal with whether the practice of collecting an administrative fee was authorized prior to the Fee Act and whether the Act was retroactive, we can consider these arguments together. Illinois follows the same rules as the federal system with respect to retroactivity. See *McGinley v. Madigan,* 851 N.E.2d 709, 717-18 (Ill. App. Ct. 2006) (stating that Illinois follows *Landgraf v. USI Film Products,* 511 U.S. 244 (1994)). Under *Landgraf,* the court first looks to see whether the legislature clearly indicated what the temporal reach of the new law should be. If no such clear indication exists, a procedural change in the law may be applied retroactively, but a substantive change will be prospective only. In *Taylor v. County of Peoria,* 727 N.E.2d 700 (Ill. App. Ct. 2000), the court held that Peoria County's decision to increase the administrative fee from $1 to $15 did not affect a vested right. *Id.* at 702. In so ruling, the court said that "[a]mending the Counties Code and the Criminal Code to allow for this fee does not implicate a vested right, as the taxing of such a fee is procedural in nature." *Id.* We see no reason here to disagree with the state

court's characterization of the law as one that creates no vested rights. Nothing in the federal Constitution prohibited the counties from changing the fees as they did.

To the extent that these counts raised issues purely under state law, the district court should have considered whether they fell within its supplemental jurisdiction. See 28 U.S.C. § 1367. Once it dismissed the federal claims, it should then have decided whether to dismiss the state-law issues without prejudice, or to retain them and resolve them. Plaintiffs, however, have not asked us to modify the judgment of the district court in a way that would permit them to turn to the state courts on the state-law claims, and we are not inclined to do so without a proper request.

### 5. Counts IX, XI, XII, XIII

The district court also dismissed Counts IX (retroactivity) and XI (unlawful use of the funds collected to compensate sheriff's office personnel) for lack of redressability. It dismissed Count XII (funds illegally obtained and then converted by defendants) because the plaintiffs did not identify specific funds that had been converted, and it dismissed Count XIII (request for injunction against the Fee Act) because plaintiffs failed to establish that they or others would suffer irreparable harm and had no adequate remedy at law. The argument on appeal covering these four counts is exactly five lines long, with a few extra sentences on Count XIII that merely reiterate the uncontroversial proposition that sovereign immunity does not shield state officials who act unconstitutionally from an injunction. This is not enough to preserve these issues here; they too are waived.

**B**

As we had directed it to do, the district court on remand took up the question whether it should certify a plaintiff class including the arrestees in all of the counties other than DuPage and Kane. As part of that inquiry, it considered whether the four subclasses requested by the named plaintiffs were appropriate. It also looked at whether a defendant class of all the counties in Illinois should be created. Applying FED. R. CIV. P. 23(a), the court decided that the commonality and numerosity requirements for a class were satisfied, but that typicality was missing:

> The Act is no longer at the heart of this action; instead it is the allegedly unconstitutional implementation of the Act by counties each acting on its own interests and by means of it[s] own devising. It is undisputed that each county independently determined how much to charge, why, and under what circumstances. Whether an individual county did so in an arbitrary and capricious manner is therefore a question which must be answered on a county-by-county basis, and it is possible that some counties violated equal protection standards and others did not. No plaintiff's claim could be, or is, typical of so broad a class as plaintiffs seek to establish.

Although the district court did not spell it out, one can infer that the same reasoning lay behind its refusal to certify the requested defendant class.

Plaintiffs first argue that if we were to reverse the district court's dismissal of the 12 claims we have already discussed, we would definitely need to order class certification. We have decided, however, to affirm that part of the district court's judgment, and so we turn to the second argument, which is that the court erred when it refused to find that the named plaintiffs'

claims were typical of the claims of those arrested in all 37 counties. With respect to all counties, they continue, the issue is "whether the Defendants arbitrarily and capriciously set bond fees, treating the various Plaintiffs differently and depriving them of equal treatment under the law." As for the proposed defendant class, plaintiffs argue that since all of the counties in the state changed their bond fees pursuant to the same statute, the Fee Act, both commonality and typicality are satisfied. Any differences between counties, they claim, are trivial.

The counties respond that the plaintiffs presented no evidence or affidavits in support of their class allegations, contrary to this court's recommendation in *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672 (7th Cir. 2001). Furthermore, the counties argue, the claims are not typical because the variance from county to county is significant. For example, plaintiffs allege that in Kane County arrestees are detained because they cannot pay the bond fee, but affidavits from several other counties indicate that arrestees are not detained if they can make bail but are unable to pay the fee. In addition, the counties point out, the named plaintiffs from DuPage County were both acquitted, but they propose to represent those who were convicted.

In *Payton I*, we observed that "Rule 23(a) inevitably requires consideration of the typicality of the claims presented by the named parties (Rule 23(a)(3)), which allows exploration of the question whether the essence of the suit relates to the state statute or if the named representatives' claims are more particular to each county." 308 F.3d at 680. In *Szabo,* we acknowledged the Supreme Court's holding in *General Telephone Co. v. Falcon,* 457 U.S. 147 (1982), that "similarity of claims and situations must be demonstrated rather than assumed." 249 F.3d at 677. As the Supreme Court put it in *Falcon,* "[s]ometimes the issues are plain enough from the

pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." 457 U.S. at 160.

Here, the district court did not abuse its discretion in finding that the named plaintiffs' claims were not typical of those of plaintiffs detained in other counties. Particularly because, at this stage, a court would have to examine whether the individual county acted arbitrarily and capriciously in setting its bond fee, whether it released people who made bond but did not pay the fee, whether the judges effectively set bond and fees taking into account the total financial burden on the arrestee, and other individualized factors, the district court's conclusion that the prerequisites for either a plaintiff or a defendant class were not met strikes us as entirely reasonable. This conclusion makes it unnecessary for us to comment on the various subclasses the plaintiffs wanted to certify.

## II

For these reasons, we AFFIRM the judgment of the district court dismissing all but Count VII from the Fourth Amended Complaint, and refusing to certify any class on Count VII with respect to the claims made against the 37 counties other than DuPage and Kane.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*