HAMILTON, Circuit Judge,
dissenting:
This should be a simple case. The village’s “booking fee” ordinance is unconstitutional on its face. It takes property from all arrestees — the guilty and the innocent alike — without due process of law. The deprivation occurs at the time of arrest, immediately and finally. It occurs based on only the say-so and perhaps even the whim of one arresting officer. By no stretch of the imagination can that be due process of law. The fee is in substance a criminal fine, modest but a fine nonetheless, and it is imposed regardless of the validity of the arrest and regardless of whether there is any criminal prosecution or what its outcome might be.
The case has become unduly complicated, however. First, the majority fails to come to grips with the obvious procedural due process challenge by mistakenly splitting plaintiffs procedural claim into separate “procedural” and “substantive” due process claims and then analyzing each separately. Then, after confusing standing with the merits, the majority holds that plaintiff lacks standing to assert the “substantive” claim. The majority also seems to accept the village’s effort to justify the fee as a “user fee” to pay for the “service” of being arrested. That turns the concept of a user fee upside down.
The obvious constitutional flaw here is easy to correct: make the fee payable upon conviction of a crime, as part of the court costs authorized by law after the full procedural protections of the criminal justice system. That is not a “substantive” due process theory, as my colleagues seem to think, but a simple correction to a facially unconstitutional law. We should reverse the district court’s dismissal and remand the case for further proceedings. I therefore respectfully dissent.
*994 I. The Procedural Due Process Violation
Before addressing the nuances of the doctrine and case law, I’ll draw the broad outlines of the problem. We start with one of the most fundamental rights protected by the Constitution: the right to property. The government — federal, state, or local — may not deprive a person of property without due process of law. U.S. Const. Arndt. V and XIV. And this case is not about the more abstract forms of property under due process jurisprudence, such as government benefits, licenses, or expectations in keeping a job. This is about cash.
Under the village’s booking fee ordinance, the deprivation of that property becomes inevitable the moment a village police officer decides to make an arrest. The booking fee will be assessed. It will be assessed regardless of whether the ar-restee is ever prosecuted, regardless of the outcome of any prosecution, and even regardless of the validity of the arrest. The booking fee ordinance thus inflicts a final deprivation of property based on the decision of a single police officer. The ordinance allows no further room for dispute or review of any kind. The effect is that the booking fee ordinance imposes a criminal fine prematurely, before charges are even filed, let alone adjudicated.
That fundamental due process violation, which is inherent' in the village’s ordinance giving one police officer the power to inflict the property deprivation, cannot be explained away by using the Mathews v. Eldridge balancing test. See 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The majority applies the Mathews v. Eldridge test with circular logic: because the fee is imposed on all arrestees, there is no need for procedure because there is essentially no risk of error. Majority at 989-91. That analysis errs because the majority fails to appreciate that the booking fee is in essence a criminal fine.
Correctly understood, the Mathews v. Eldridge framework requires that any booking fee await the outcome of a criminal prosecution. First, a person’s private interest in his cash, his property, is protected by the Constitution whether the amount is large or small. Second, the risk of erroneous deprivation is in fact very substantial. The pivotal decision that imposes the deprivation is a lone police officer’s decision to arrest. A lone police officer’s decision is subject to judicial review even when she writes a mere speeding ticket, let alone imposes a criminal fine. Many people who are arrested are not even charged with crimes, and many charges result in either dismissal or acquittal, so that as many as 30 percent and perhaps nearly 50 percent of arrestees may pay the fee without any criminal conviction.[1]
*995 Third, the governmental interest in collecting such a fee generally may be significant, but if we ask whether the government has a legitimate interest in charging a fee to the many arrestees who will not be convicted of a crime, that interest just evaporates. Finally, there is no marginal cost for the government if it must wait for the outcome of the criminal charges. For anyone who might legitimately be required to pay the fee, those procedures will be used whether an arrest fee is imposed or not.
II. The Defense Arguments
Perhaps the most difficult question about this case is whether the defense of this booking fee law is more similar to the fiction of Lewis Carroll or of George Orwell. First, let’s consider Lewis Carroll, who gave us the Queen of Hearts’ philosophy of “sentence first, verdict afterwards.” That describes the booking fee once we recognize it is in fact a fine for (suspected) criminal conduct. With that understanding, the due process problem should be self-evident.

A. The “Substantive Due Process” Detour

The majority seeks to avoid this conclusion by framing the problem of imposing the fee on all arrestees as one of “substantive due process” and finding that plaintiff Markadonatos has no standing to raise such a claim. The majority thus fails to see that the deprivation occurs at the moment the fee is imposed upon booking, regardless of the later outcome of any later criminal prosecution. The government is not entitled to seize property summarily and then to justify the seizure by the result of a later trial. But see Concurrence at 993. That is a procedural due process violation as basic as “sentence first, verdict afterwards.”
The majority’s detour into substantive due process is mistaken as to both the nature of a substantive due process claim and the relationship between standing and the merits of a claim. (Unfortunately, plaintiffs counsel abetted these mistakes by even mentioning substantive due process.) As the Supreme Court has explained, its line of substantive due process cases interprets the Fifth and Fourteenth Amendments’ Due Process Clauses “to include a substantive component, which forbids the government to infringe certain ‘fundamental’ liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.” Reno v. Flores, 507 U.S. 292, 301-02, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). When substantive due process is understood properly, it obviously does not prevent the government from imposing a fine or fee as part of the punishment for a crime.
The problem here is thus not the substantive result of imposing a criminal fine. When imposed through the procedures of the criminal justice system, that result poses no due process issue. The problem here is the procedures used, or not used. *996 Judge Sykes’ concurring opinion states correctly that my objection is to “the content” of the booking fee ordinance, but the objection is to the “content” that deprives all arrestees of their property without any procedural protection after the decision to arrest. That objection to “content” cannot be avoided by calling it a substantive due process argument. It’s the lack of procedures that is the issue.
The majority’s treatment of this supposed substantive due process theory is further confused by its odd blurring of the boundary between standing and the merits. See Majority at 988 (in considering standing: “we still question whether Woodridge’s collection of the booking fee was an invasion of Mr. Markadonatos’ legal rights, particularly with regard to his substantive due process claim”). As mistaken as the majority’s treatment of this theory is, though, it does have the redeeming virtue of leaving the door open for a constitutional challenge by persons in a better position than Mr. Markadonatos to do so.

B. The “User Fee” Rationale

The village offers an alternate view of the booking fee as a sort of “user fee” for the privilege of being arrested and booked. This is the Orwellian version, where language is used to mean the opposite of reality. (“War is peace. Freedom is slavery. Ignorance is strength.”) I am not aware of, and the village and the majority have not cited, any “user fee” imposed where the “user” has not acted voluntarily to use government services or facilities (a toll road, a state park, a hunting license, etc.). See generally National Cable Television Ass’n v. United States, 415 U.S. 336, 340, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974) (“A fee, however, is incident to a voluntary act....”); Massachusetts v. United States, 435 U.S. 444, 461-63, 98 S.Ct. 1153, 55 L.Ed.2d 403 (1978) (holding that federal government could charge state a fee for use of state-owned aircraft in return for benefits of federal aviation programs); Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc., 651 F.3d 722, 728-29 (7th Cir.2011) (en banc) (distinguishing between user fees and taxes for purposes of Tax Injunction Act).
During oral argument, the village tried to justify this user fee theory by explaining that a person arrested by mistake would still properly owe the fee because he would have benefitted from the “services” of being photographed and fingerprinted. That argument surely qualifies as Orwellian.[2]
III. More on the Merits
A more detailed analysis of the relevant doctrine and case law must begin with a basic principle of due process. A person may not be punished for a crime until a neutral fact-finder determines that the elements of the crime have been proven beyond a reasonable doubt. In re Winship, 397 U.S. 358, 361, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); Sullivan v. Louisiana, 508 U.S. 275, 278, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). That proof happens through the processes of our criminal justice system in the courts. It does not happen when a police officer makes an arrest. Even a suspect’s confession to an officer on the spot is only evidence. It does not entitle the officer to impose judgment and punishment.
Yet punishment is exactly what happens when the village collects its booking fee. This is evident in the district court’s rea *997 soning. The district court wrote: “it is rational to share the costs of incarceration with those who through their actions necessitate that those costs be incurred.” Markadonatos v. Village of Woodridge, 2012 WL 2128386, at *5 (N.D.Ill. June 11, 2012) (emphasis added). The majority endorses this logic as part of its substantive due process analysis, finding it rational that the village “takes money to cover the administrative costs of booking from the individuals whose actions caused the cost to begin with.” Majority at 992 (emphasis added). By blaming the arrestee for the cost, the district court and the majority beg the question to be decided in the criminal justice process itself: is the arres-tee guilty of a crime?
Mr. Markadonatos is not a particularly sympathetic plaintiff, of course. He does not claim that his arrest resulted from any mistake or was made without probable cause. He was arrested for shoplifting and admitted his guilt, though he wound up in a diversion program in which the, ultimate adjudication was a finding of “not guilty.” The majority defends its decision by asserting that his arrest was made with probable cause. I assume that’s true, but it’s not relevant to the validity of the booking fee ordinance, and the majority does not explain why it is. The plaintiffs individual circumstances do not matter for his constitutional challenge to the ordinance because his individual circumstances do not matter at all under the ordinance. The booking fee is collected at the moment of booking and is based on the say-so of just one police officer. The arrestee is deprived of his property at that moment, with no provision in the law for further process or even post-deprivation remedy. In other words, every arrestee’s right not to be deprived of property without due process of law is violated at the moment of booking, regardless of whether the arrest was with or without probable cause, regardless of whether the arrestee is actually prosecuted, and regardless of the outcome of any prosecution. To justify the fee based on a later plea or conviction is to endorse the Queen of Hearts’ justice, albeit on a modest scale.
At the risk of belaboring the obvious, probable cause for an arrest is of course a complete defense to a federal constitutional claim for wrongful seizure of the person and a state law claim for false arrest. E.g., Mustafa v. City of Chicago, 442 F.3d 544, 547 (7th Cir.2006). To my knowledge, though, American courts have never before even suggested that mere probable cause is a sufficient basis for imposing a criminal fine — éven a modest one — without the further procedural protections of our criminal justice system. Yet that is the effect of the majority’s decision.
Consider, for example, the problem posed by a person arrested as a result of mistaken identity. Suppose a police officer conducts a routine traffic stop, checks the driver’s identification, and learns there is an outstanding arrest warrant for a person of the same name and a similar description. The officer may have probable cause to arrest the driver on the basis of the warrant, but surely all would agree that the driver is entitled to be released promptly once the mistaken identity is shown. If the officer makes the arrest in Woodridge, though, the driver must pay the booking fee and is, according to the village and the majority, not entitled to return of the money. Why on earth is that justifiable? The village’s only response is its Orwellian claim that the arrested driver would have “benefitted” from the “services” of being photographed and fingerprinted. Please. And the majority endorses that result but provides no better explanation.
The village and the majority also defend the booking fee by suggesting that some sort of post-deprivation remedy is available and thus cures any due process prob *998 lem. See Majority at 991, citing Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). That argument fails on both legal and factual grounds. The legal problems begin with the fact that the deprivation of property here is not random or unauthorized, as it was in both Hudson and the case it followed, Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), where a post-deprivation remedy was the only practical remedy for unauthorized wrongs. Hudson had to distinguish Logan v. Zimmerman Brush Co., 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), which held that a post-deprivation remedy did not satisfy due process where the property deprivation was effected pursuant to an established government procedure. Hudson, 468 U.S. at 534, 104 S.Ct. 3194. That’s why the Hudson holding was framed this way: “We hold that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available.” Id. at 533,104 S.Ct. 3194 (emphasis added).
The majority’s analysis simply overlooks the word “unauthorized” in Hudson, and the deprivation here was of course the intended and authorized result of the village’s ordinance. Under well established law, the possibility of a later lawsuit, as a remedy therefore does not cure the constitutional problem. See generally, e.g., Schepers v. Commissioner, 691 F.3d 909, 916 (7th Cir.2012) (making this point based on Parratt and Logan ).[3]
The second legal problem is that the terms of the ordinance leave no room for a remedy. Once an officer decides to arrest a person, there is nothing more to decide. The majority points out correctly that the chances of an error in collecting the fee are, under the terms of the ordinance, minuscule. But that is only evidence of the constitutional problem — punishment before verdict — not a constitutional defense. See Johnson v. City of Evanston, 250 F.3d 560, 562 (7th Cir.2001) (city’s contention that plaintiff had no remedy for deprivation of use of his car “just [made] Johnson’s constitutional point”).
The factual problems with the supposed later remedies are laid bare when the village and the majority point out that some arrestees might have a civil claim for false arrest. That is true, but as noted above, a civil claim for false arrest is available only to people arrested without probable cause, not to many others never convicted of a crime. Second, even if the arrest was without probable cause and the damages for false arrest might include the booking fee, the amount of property taken is too modest for the remedy to be meaningful without the help of a class action. As we have said in related contexts, “only a lunatic or a fanatic sues for $30.” Carnegie v. Household Int’l, Inc., 376 F.3d 656, 661 (7th Cir.2004). For a modest civil claim in the DuPage County courts, the filing fee alone is $150.[4] *999 So this booking fee ordinance imposes either punishment before verdict, like the Queen of Hearts’ justice in Alice in Wonderland, or an Orwellian “user fee” on the unwilling arrestee who may well have done nothing wrong. Either way, it’s an unconstitutional deprivation of property without due process of law.
IV. The Case Law
The majority defends its decision by citing several cases allowing jails and prisons to charge inmates for the cost of room and board. See Majority at 991. In the first of the cited cases, Tillman v. Lebanon County Correctional Facility, 221 F.3d 410 (3d Cir.2000), the Third Circuit found no due process violation when a jail assessed a daily housing fee against an inmate in custody for state parole violations. Tillman does not support the majority’s decision here because the plaintiff there had been convicted of a crime; he had already had ample procedural protections. See 221 F.3d at 414 (money confiscated when plaintiff was returned to prison). The majority finds a little more support from Slade v. Hampton Roads Regional Jail, 407 F.3d 243, 253-54 (4th Cir.2005), which upheld a fee of one dollar per day for pretrial detainees. While I disagree with much of the reasoning in Slade, which did not recognize the “sentence first, verdict afterwards” problem, the Fourth Circuit at least took care to point out that a detainee who was acquitted of charges was entitled to a refund, id. at 247, 254 n. 9, and the court also assumed a grievance procedure offered a remedy. Neither is true under the village’s ordinance here.
The majority finds its strongest support in Sickles v. Campbell County, 501 F.3d 726 (6th Cir.2007), which rejected a due process challenge to a county jail’s policy of withholding cash from inmates to cover some costs of incarceration. The Sixth Circuit recognized that it would be a constitutional problem to deprive an inmate of his property if he were not convicted of a crime, but the court avoided those problems by finding that the two inmate plaintiffs could not raise those claims. One had been convicted and ordered to “pay the costs of proceeding herein,” and the other’s claim would not be ripe unless and until he were acquitted and the county refused a claim for refund. See 501 F.3d at 732-33. While I disagree with the Sixth Circuit’s reasoning in Sickles because it also failed to recognize the “sentence first, verdict afterwards” problem, the majority here seems to reach beyond even Sickles by finding that anyone arrested with mere probable cause can be charged a nonrefundable booking fee.
While we are considering applicable case law, I commend the sound reasoning in Roehl v. City of Naperville, 857 F.Supp.2d 707 (N.D.I11.2012), and Allen v. Leis, 213 F.Supp.2d 819 (S.D.Ohio 2002). In Roehl, Magistrate Judge Schenkier correctly denied a motion to dismiss a due process challenge to a very similar fifty dollar booking fee that applied to all arrestees and provided no post-deprivation remedy. His careful opinion addressed and rejected all the arguments made by the village in this case. In Allen, Judge Spiegel correctly granted summary judgment, holding *1000 that a very similar thirty dollar booking fee violated due process even where there was a process for seeking a later refund, after acquittal or dismissal of criminal charges.
In a variation on the user fee theory, the village (but not the majority) also tries to justify its booking fee as merely an “administrative fee” that should be permitted under the reasoning of Schilb v. Kuebel, 404 U.S. 357, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971), and Payton v. County of Carroll, 473 F.3d 845 (7th Cir.2007), even for arres-tees who are never convicted of a crime. A closer look at the more precise reasoning of those decisions shows, though, that the booking fee here denies due process of law. In Schilb, the Supreme Court upheld an Illinois law that allowed a county to charge an administrative fee of one percent of the total bail amount for pretrial defendants using the court-administered bail-bond system. That fee applied to defendants who were ultimately acquitted. Payton upheld a similar administrative fee imposed on people posting bond.
There are two key differences between those eases and this one. First, the use of the reformed bail bond system in Illinois was voluntary in both cases. As the opinion in Payton made clear, there were other avenues for obtaining liberty before trial without using a bail bond (posting the full amount of security or release on personal recognizance), see 473 F.3d at 851, and the same was true in Schilb. See 404 U.S. at 367-68, 92 S.Ct. 479. There is nothing remotely voluntary about the village’s booking fee. Second, as we also explained in Payton, the administrative fees for bail bonds in both Schilb and Payton were imposed in a court system with “a number of safeguards against detention of people who cannot afford this fee,” and the opportunity to ask a court to reduce bail was an important procedural protection. 473 F.3d at 851-52. There are no similar protections in this case. The village cannot save this booking fee by labeling it an “administrative fee.”
More closely on point is the Supreme Court’s decision in Giaccio v. Pennsylvania, 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966), discussed in Schilb. In Giac-cio, the Court struck down an old Pennsylvania statute that allowed a jury in a criminal case to assess court costs against a defendant whom it acquitted. The Court majority limited its holding to the narrow ground that the statute gave the jury no standards so that the imposition of costs on any acquitted defendant would be arbitrary. 382 U.S. at 403, 86 S.Ct. 518. Justices Stewart and Fortas both concurred separately on the more fundamental ground that it violates the Due Process Clause to impose a penalty or costs on an acquitted defendant. Id. at 405, 86 S.Ct. 518. That’s exactly right, and it’s the problem with the village’s booking fee here.
V. Conclusion
Perhaps a reader might wonder whether this case deserves a dissent. It involves, after all, only thirty dollars and one small municipality in northern Illinois. While thirty dollars may not seem like much to the governing class in our society, including lawyers and judges, it is for too many people a vital amount of cash. Thirty dollars is roughly the average allotment under the federal Food Stamp program (now known as the Supplemental Nutrition Assistance Program) to help feed an adult for a week. It’s also the federal minimum wage for more than half a day of work. The amount at stake may affect the timing and extent of process that is due, such as whether a pre-deprivation hearing is needed. But property is property, and the government cannot take even one dollar *1001 without due process of law. This ordinance offers none.
The issue here also reaches far beyond the Village of Woodridge. In this circuit alone, district courts have addressed due process challenges to similar local booking fees in Roehl v. City of Naperville, 857 F.Supp.2d 707 (N.D.I11.2012) (denying motion to dismiss due process challenge); Bailiff v. Village of Downers Grove, 2011 WL 6818958 (N.D.I11. Dec. 16, 2011) (granting motion to certify plaintiff class); Silvas v. Dominguez, 2006 WL 1128233 (N.D.Ind. Apr. 24, 2006) (granting judgment for defense after trial); and Sanchez v. Becher, 2003 WL 1563941 (S.D.Ind. Jan. 31, 2003) (granting motion to certify plaintiff class). The governments in Roehl, Bailiff, and Sanchez settled and modified their practices, but the majority’s decision will, if it stands, invite local governments throughout the circuit and perhaps elsewhere to impose such booking fees. For governments under fiscal pressure, the temptation may be strong to raise money with such fees on a group unlikely to have political clout.
I hope, though, that the Village of Woodridge and other local governments considering such fees see the clear warning signs from even the majority. Both the majority and concurring opinions seem to leave the door open to suits on behalf of at least the many arrestees who are not convicted of a crime or those who are arrested without probable cause. See Majority at 989 & n. 2; Concurrence at 993. Neither opinion attempts to justify imposing arrest fees on such people.
Properly understood, the village’s booking fee violates the due process rights of all arrestees, but the violation is most obvious for people who are never convicted or even prosecuted. As noted above, that is a sizable proportion of all arrestees. Depending on the geographic jurisdiction and the charge, it may range from perhaps 30 percent up to nearly 50 percent of arres-tees. That is a very high error rate for purposes of Mathews v. Eldridge and it’s a lot of unjustified criminal fines imposed without due process of law. Future suits on behalf of such persons, with attorney fee awards under 42 U.S.C. § 1988, could quickly become much more expensive for local governments than any short-term financial gain the fees might provide.
For all these reasons, I would reverse the judgment of the district court and remand the case for further proceedings.

. Since the district court dismissed the case at the pleading stage, we do not have a factual record with reliable data from Woodridge. The approximate range of 30% to nearly 50% is supported by available data from other jurisdictions. For example, in 2012 in California, there were more than 295,000 felony arrests, yet nearly 20 percent were not even prosecuted, and another 12 percent prevailed in court. Cal. Dep’t of Justice, Crime in California 2012 at 50 (Table 38A, Dispositions of Adult Felony Arrests 2007-2012), available at http://oag.ca.gov/sites/all/files/pdfs/cjsc/ publications/candd/cdl2/cdl2.pdf? (last visited Jan. 3, 2014). In DuPage County, Illinois, where Woodridge is located, the readily available statistics do not provide precise guidance. Yet in 2009 there were 4621 arrests for violent and property crimes, but only 3026 felony cases of any type were filed. See Illinois Criminal Justice Information Authority, Detailed Data Tables: DuPage County, available at www.icjia.org/public/sac/ instantatlas/MainHTML/report_Counties_22. html (last visited Jan. 3, 2014). These figures suggest a significant drop-off from arrest to prosecution. The drop-off from being prose *995 cuted to being convicted is also large. In 2006 in the nation’s 75 most populous counties, nearly a quarter of persons charged with felonies (24%) were not convicted. U.S. Department of Justice, Bureau of Justice Statistics Bulletin, Felony Defendants in Large Urban Counties, 2006, page 11 (May 2010). The conviction rate for misdemeanor arrests (and Markadonatos was charged with a Class A misdemeanor) may well be substantially lower. New York State data for 2012 show, for example, that about 56% of misdemeanor arrests result in convictions, as compared to about 69% of felony arrests. New York State Division of Criminal Justice Services, Adult Arrests Disposed, available at www.criminal justice.ny.gov/crimnet/ojsa/dispos/nys.pdf (last visited Jan. 3, 2014). The California data cited above indicate that approximately one-third of those arrested on suspicion of a felony are not convicted of any crime.

. "The Ministry of Peace concerns itself with war, the Ministry of Truth with lies, the Ministry of Love with torture and the Ministry of Plenty with starvation. These contradictions are not accidental, nor do they result from ordinary hypocrisy: they are deliberate exercises in doublethink.” George Orwell, 1984.

. Because the deprivation here is not a random or unauthorized violation, the village could not cure the constitutional defects by merely creating a procedure for some arres-tees — such as those not convicted — to ask for a refund of the property taken from them. As the case law interpreting Parratt and Logan shows, if the government takes a person's property without due process, deliberately and pursuant to clear policy, the existence of a post-deprivation remedy is not a constitutional vaccine. That’s evident from Hudson 's discussion of Logan and from Doherty v. City of Chicago, 75 F.3d 318, 323 (7th Cir.1996), also cited by the majority, which recognized exactly the same distinction between authorized and unauthorized deprivations of property-

. In two other odd passages, the majority suggests that an arrestee or at least an "ordi *999 nary citizen” who believes he should not have been arrested could complain to either the arresting officer or a judge in his criminal case, which should guard against an erroneous deprivation. Majority at 990 and 991. Yet as the majority acknowledges, the ordinance itself provides no such opportunity. It requires the fee to be imposed on all arres-tees, without room for discretion. That’s why the majority finds so little risk of error in its Mathews v. Eldridge balancing, so it’s difficult to see how the possibility of an improvised and informal appeal for (unauthorized) mercy would help solve the constitutional problem here.